NATHAN, Judge,
dissenting.*
This is an appeal by two of three plaintiffs in a mortgage foreclosure action from a final judgment which limited the sum recoverable by imposing a penalty for usury. Although multiple issues were presented for our consideration, we reach only a single point. The definitive issue is whether the court was correct in its finding that the testimony of plaintiffs’ accountant reflected a particular sum as the total interest paid or due from the commencement of the loan until its stated maturity date. Despite the presumption of correctness with which such finding arrives in this court, a careful review of the crucial testimony reveals that the trial court misconstrued it. As a result, the finding which specifically states that the total interest found to be paid or due was “computed by the Plaintiffs” and was “reflected by the testimony of the Plaintiffs’ accountant,” was erroneous.
The record reflects that on January 8, 1975, three plaintiffs, Baker Mortgage Company, Cameron-Brown Investment Group and Beneficial Standard Mortgage Investors, filed a complaint to foreclose a mortgage which was originally arranged between Baker and the defendant, D. Mitchell Investments, Inc., on July 6, 1972. On November 8,1973, in consideration of an additional loan from Baker, Mitchell delivered a supplemental promissory note to Baker together with a modification to the mortgage. Plaintiffs Cameron and Beneficial participated with Baker in making the loans. Since May, 1974, the defendant was in default.
At trial, the primary issue to be resolved was whether or not the loan was usurious. Plaintiffs stipulated that the principal sum due on the mortgage loan was $3,242,000.00, and defendant conceded that the interest received, taken or extracted did not equal or exceed 25% per annum. Voluminous testimony was taken during a three-day trial. Some six months after the conclusion of the trial, the court rendered its final judgment. The trial judge made the following findings of facts:
*1111 1. On or about July 6, 1972, Baker, acting on behalf of itself as a participant and as agent for Cameron, entered into a construction loan transaction with Mitchell. The loan was evidenced by a promissory note dated July 6, 1972, under which the sum of $2,000,000.00 was to be advanced. The note was secured by a mortgage of like date on the property. . The note provided for payment of interest at 9% per annum, or 4% above the prime rate of [a certain bank], whichever amount was greater. Baker participated in the loan to the extent of $200,000.00 while Cameron participated to the extent of $1,800,000.00.
2. On November 8, 1973, Baker, acting on behalf of itself as a participant and as agent for Cameron and Beneficial, entered into a “Modification to Mortgage Deed” with Mitchell, and increased the mortgage loan to $3,250,000.00, which increase was then evidenced by an additional note for $1,250,000.00, dated November 8, 1973. This note provided for payment of interest of 14% per annum, or 4% above the prime rate of [the bank], whichever was the higher rate.
3. Advances were made under the mortgage and construction loan agreement of July 6, 1972, as modified by the agreement of November 8,1973, until the total sum of $3,242,000.00 was advanced to Mitchell.
4. Baker, a professional mortgage lender, continued to handle all the matters pertaining to the placing and servicing of said loan and the increase thereof, and was a participant in the loan to the extent of $200,000.00 while Cameron and Beneficial, both professional mortgage lenders, each participated equally in the ownership of the balance of the loan and advanced equal funds in connection with the funding of same.
5. Although the notes did not become due until May 8,1975, in May of 1974, the loan went into default and as of October 28, 1974, Baker on behalf of itself and its participants, made demand for past due interest, then unpaid in the sum of $252,-554.54, together with the unpaid principal amount of $3,242,000.00.
6. The total interest as computed by the Plaintiffs as being paid or due from the date of commencement of the loan up to and including the maturity date of the loan of May 8, 1975, as reflected by the testimony of the Plaintiffs’ accountant, was $996,055.09, of which sum $534,324.73 was paid.
7. With the exception of an accountant who was called by the Plaintiff, whose testimony was relied upon by this Court to determine the rate of interest charged, no single witness or officer of any of the three Plaintiff companies has testified or endeavored to explain or refute in any manner the testimony establishing the usurious nature of the transaction.
8. It has been established by unrefuted, clear and convincing testimony, that Baker, acting as a participant and as the authorized agent of Cameron and Beneficial, received, and in some instances divided with Cameron and Beneficial, the following additional fees, commissions, payments or extractions, each of which should be added to the interest paid or demanded:
A. A 2% discount to Baker and/or Cameron _$ 40,000.00
B. A disbursement fee to Baker _$ 2,000.00
C. A title insurance kickback to Baker, in excess of the cost of the title policy written by Baker_$ 7,184.50
D. A discount fee divided between Cameron and Beneficial _$ 48,750.00
E. A disbursement fee to Baker_$ 8,125.00
F. An administration fee to Baker _ _ $ 500.00
G. An application fee to Baker_$ 12,500.00
H. A brokerage commission fee to Baker, by way of a note and second mortgage on the property_$ 65,000.00
I. Improvements made to Baker’s office and paid for by Mitchell_$ 3,000.00
J. Fee received by Baker and admitted by Affidavit as an extra interest charge _$ 15.500.00
Total additional charges_$202,550.50
(Citations omitted)
9.When the foregoing charges or extractions are added to the total interest paid, demanded or extracted as reflected previously, in the amount of $996,055.09, the sum paid, demanded or extracted, as *1112 interest is the amount of $1,198,605.59. The maximum sum allowable as interest at 15% per annum for the sums outstanding from time to time, for the period of the loan as testified to by the Plaintiffs’ witness is the sum of $1,006,157.47.
10. The sums paid, demanded or extracted, exceed the maximum permitted by Florida Statute, by $192,442.62. The total cumulative interest, fees, commissions and extractions paid, demanded or extracted, when reduced to a percentage, yields a true rate of interest on the sums outstanding from time to time, of 18.2% per annum.
11. That the taking of such interest, fees, commissions and/or extractions, is contrary to the provisions of Chapter 687, Florida Statutes, and is in violation thereof. The penalties as therein provided should be assessed against the Plaintiffs. (Emphasis supplied)
The court ruled that the plaintiffs hold a valid first mortgage on the property in the principal sum of $3,242,000.00. It then ordered that all interest on the principal balance be forfeited; that judgment be rendered in favor of the defendant on the usury counterclaim in the sum of $1,473,-750.44, double the amount of the interest paid, demanded or extracted, which sum is to be offset from the principal; and that the net sum due from the defendant to the plaintiffs in the amount of $1,768,249.56, shall be paid within 60 days, failing which the clerk of the court is to sell the property at public action.
Examination of the final judgment reveals the following pertinent data:
1. The total interest “as computed by the Plaintiffs as being paid or due” was_$ 996,055.09
2. The total “additional charges” were $ 202,550.50
3. The total interest “paid, demanded or extracted” was_$1,198,605.59
4. ' The total allowable interest was_$1,006,157.47
5. The excess of the sums “paid, demanded or extracted” over the sums allowable was _$ 192,442.62[1]
The conclusion that the sums “paid, demanded or extracted” exceeded the allowable interest was premised on figures the court stated were supplied by plaintiffs’ accountant. Plaintiffs, appellants herein, vigorously refute this finding, and contend that the accountant whose evidence is at issue did not testify that the sum of $996,-055.09 was the total interest plaintiffs considered due. Since no usury would have occurred if the total interest sought were $192,442.62 [2] less than that computed by the court, it is critical to this cause that we examine the accountant’s testimony.
When counsel for the plaintiffs called the witness, Mr. Murdock, to the stand, the following pertinent colloquy ensued:
Q At my request, have you computed the amounts of money that were charged in this matter, computed the amounts demanded, and computed the per diem and then all of the other computations to determine the amounts of money that were charged if the Court rendered an order today?
A Yes, I have.

Q [By Mr. Bailey] Now, sir, Mr. Mur-dock, would you then please explain to the Court the interest that has been charged and is due, and explain how you arrived at these numbers?
A . . . . Interest due at the maturity of the loan amounted to $252,554.55, and using a per diem after that date of thirteen thirty-two thirty-three, additional interest is due, $559,578.60, making a total due as of June 30, $812,133.15.
Q Yesterday in an attempt to stipulate on numbers in this case, you sat down with Mr. Leader and went over his computations.
A Yes, I did.
Q Does the $812,000 figure that you have there bear any relation to the mil *1113 lion seven thousand dollar figure that he testified about in court yesterday?
A No, it doesn’t.
The figure that he offered the Court yesterday was through the maturity of the loan, one million seven thousand, as I remember.
Q The maturity of the loan being what date?
A 5-8-1975.
Q May 8, 1975?
A Right.
Q What is your corresponding number as to what amounts were actually called for here?
What is your number that is comparable to that thousand or that million seven thousand dollars?
A As allowable, you mean?
Q Yes, sir. He said the maximum allowable in his opinion would have been a million seven thousand some odd dollars.
What is the figure that is actually demanded here to be paid?

Q . The total interests collected, assuming Mr. Greenfield is right, that there are two different loans, the total interest collected in the first loan was $305,757.91?
A The total interest collected on the second loan is $228,566.82, making a grand total of $534,324.73.

THE WITNESS: Going on and just coming down about another quarter, two computations below this number, we pick up with that number through 5-8 as collected. $534,324.73, then to that we add that bill through 5-8,1975, of $252,554.55, making a total bill and collected of $786,-879.28.
Q Did I ask you for purposes of this computation to assume that the charges, that all of the charges of Mr. Greenfield’s claims are interest, to assume that those items are interest?
A Yes, you did.
Q And that is the number alleged additional interest there, $204,600?
A Yes, it is.
Q And the total, then, giving Mr. Greenfield his argument, for purposes of argument, the total would be $991,479.28, right?
A Yes, it would.
Q Now, that is less, is it not, than the million seven thousand dollars that Mr. Leader opined yesterday would be a matter of usurious interest?
A Yes, it is.
Q Then, I think you have told us before that the computations below and the words MAT on your notation there, mean maturity?
That computation of the $559,000 is what?
A The $559,000 represents the per diem interest at $1,332.33 after maturity through June 30, 1976.
Q So that the total interest due today, if you add' that per diem charge to the amount claimed at the time this lawsuit was commenced, you would come up with the figure of $812,133.15?
A That’s correct.
Upon cross examination by defendant’s counsel, the following pertinent testimony was given:
Q When you computed the amount presently due, did you make a computation of how much interest is due as of May 8, 1975?

A Yes, I did.
Q How much was that amount?
A That amount was $252,554.55.
Q Is that the computation of what is due on the combination of both loans as of May 8, 1975?
A Yes, sir, that’s correct.
Q You are sure, now?
A Yes, sir.
Q Did you ever have occasion to read the complaint upon which this suit is brought?
A Yes, I have reviewed the complaint.
Q When did you review it?
A The first time that I had seen the complaint was yesterday afternoon.
*1114 Q Did you review Paragraph 3 of the complaint? Would you read it, please?
A ‘As of May, 1974, defendants have been in default under the above referenced loan documents by having failed to pay interest thereon as required by the above referred to loan documents. Following numerous demands for the past due interest on October 28, 1974, plaintiff, Baker Mortgage Company, sent a Notice of Default to both defendants (Exhibit K hereto). As of December 2, 1974, defendants owed plaintiffs $252,-554.55 in past due interest, together with the principal sum of $3,242,000.’
Q Now, in making your computation as to what was due May 8, 1975, did you consider that $252,554.55 of past due interest up to December 2 of 1974?
A Yes, I did.
Q Well, do I misunderstand then that your computation shows $252,554.55 as of May 8, of 1975?
A Yes.
Q Well, the complaint says at December 2,1974, that amount was due, does it not?
A Yes, it does.
Q Then would not the interest be computed by adding on a daily per diem basis from December 2, 1974? You have until May 8 of 1975.

Q You would not compute the interest in that fashion by adding to the amount that was due on December 2, 1974, on a per diem basis up to the date of May 8, 1975?
A No, sir.

THE WITNESS: Our review of Baker Mortgage’s records was for the fact, since this loan was on a variable rate to determine if we were entitled to additional interest, to determine if the interest was in excess of fifteen percent.
As a consequence, the last billed portion was deemed to be the appropriate amount of interest due.
Q So are you telling me that you found that the books of Baker reflected that as a matter of fact he was demanding and had collected interest in excess of fifteen percent?
A No, I didn’t say that he had.
Q Well, you have reduced down the amount that Mr. Baker computed, have you not? ■
A No, sir, I did not reduce the amount that Mr. Baker computed. The last amount billed for the books and records of Baker Mortgage Company is equivalent to the $252,000 as indicated.
Q As of December 2, 1974, is that correct?
A Our review was conducted as of 2— 28-1975.
Q But at that time the indication in his books and records were that there was $252,554.55 due on December 2, 1974, is that not correct?
A That’s correct.
Q Would you tell us what the computation would be from December 2, 1974, up to May 8 of 1975, at the daily per annum interest rate of, I think, it is $1,333 per day?
A Your Honor, I object to that as calling for speculation. It was never done.
THE COURT: Overruled.

THE WITNESS: Sir, that would be 157 days at a rate of thirteen thirty-two thirty-three, and it would equal $209,175.81.
Q [By Mr. Greenfield] When you add the $252,554.55 to the $209,175.81, what do you get, Mr. Murdock?

A $461,730.36.

Q [By Mr. Greenfield] Now, Mr. Mur-dock, when you take that number that we have now arrived at, $461,736, and you add it to the interest paid of $534,324.73, what is the total of that?
A You asked me to add the $534,324.73 and the $461,730.36, is that correct?
Q Yes, sir.
A I get $996,055.09.
*1115 Q So, that the total of that interest collected and the interest computed from the complaint, and giving effect to the per diem rate forward, is a total of $996,-055.09, correct?
A Would you repeat that again please?
Q A total of the interest collected of $534,324.73 plus the interest as alleged in the complaint of $252,554.55, and giving effect to the per diem rate, and bringing that current to May 8, of 1975, gives a total of $996,055.09, is that correct?
A Yes, it does.
Q And using the same computations or the same processes, Mr. Leader’s total number was $949,789.53, was it not?
A Sir, I don’t remember that number.
Q You have no recollection of the number at all?
A I remember it was something like fifty-seven less than the total allowable of $1,007,000.
Q So that if you took your interest allowable of $1,006,187.46 as against the $996,055.09, which we now have here, you only have a difference of some ten thousand, is that correct?
A That would be correct.
Q So that any charges under these computations, any charges which would be imposed upon the loan in excess of $10,-000 would have brought the yield or the return, or the interest which the loan would yield in excess of fifteen percent, is that right?

A Yes, sir. The answer is yes.
Examination of the above quoted testimony shows that the figures adduced by Mr. Murdock on his own were:
Total interest collected through May 8, 1974-$534,324.73
Total interest due between May 8,1974, and May 8,1975 -$252.554.55 Total collectible interest through maturity $786.879.28
When the “additional charges” of $202,-550.50 are added to this figure, the sum reached is $989,429.78, which is well below the agreed upon allowable sum of $1,006,-157.47.
On the other hand, on cross examination, the figures adduced were:
1. Total interest collected through May 8,1975 _$534,324.73
2. 3. Interest claimed as of December 2,1974 _$252,554.55 Additional interest due from December 2, 1974, to May 8, 1975, [3] based on a per diem charge of $1,332.33 _ .$461,730.36 $209.175.81 allegedly
4. Total interest / demanded _$996.055.09
When the “additional charges” are added to this figure, the sum reached is $1,198,605.59, or $192,448.12 over the allowable interest. It was this computation which the trial court relied upon and which is stated, in the final judgment, to be Mr. Murdock’s testimony.
We are unable to agree with the trial court that these figures represent the testimony of plaintiffs’ accountant. On the contrary, the figures were derived from defense counsel’s cross examination of Mr. Murdock, and were based, not on the witness’ methods of computation, but upon computations orchestrated by defense counsel. In essence, the witness, when arriving at these figures, was performing as a mechanical computer, the programmer having been defense counsel.
It would be both unfair and inaccurate to characterize Mr. Murdock’s mechanical responses to counsel’s questions as plaintiffs’ computations of the interest to be charged. The misleading implication of finding Number 6 is that plaintiffs’ accountant construed the loan documents to obligate defendants for unpaid interest of $461,730.36, *1116 when in fact, he stated that his conclusion was that $252,554.55 remained due at the maturation date of the loan. Insofar as it describes the crucial computation as a reflection of the testimony of plaintiffs’ accountant, the trial court’s finding contradicts the testimony which it cites, and upon which it assertively relies.
By this opinion, we make no determination as to the correctness of either method of computation, nor do we reach any of the other points raised by appellants because these arguments may become moot if, on remand, the trial court determines the transactions were not usurious. We decide today only that the final judgment does not reflect a fair characterization of the evidence therein relied upon. Indeed, the precise issue to be determined upon remand is the actual interest remaining due and payable at the maturity date of the loan. We therefore reverse the decision of the trial court and remand the cause for further proceedings consistent with this opinion.
Reversed and remanded.

 Judge Nathan’s opinion was written as a majority opinion but did not receive a majority vote. Because of his untimely demise, his opinion is filed in its original form as a dissent.

. We note the existence of a minor, inconsequential arithmetical error of $5.50 in the court’s figures. The difference between $1,198,605.59 and $1,006,157.47 is $192,448.12.

. The court’s figures.

. Appellants contend that the computation based on a per diem charge of $1332.33 is irrelevant, because this charge is derived from a post-maturity rate of interest which is higher than that allowed for pre-maturity interest. They contend the figure should have been used only to compute interest due from date of maturity to date of trial. Moreover, appellants contend that the interest claimed in their complaint as being due on December 2, 1974 does not represent an appropriate starting point for additional computation of interest.